## N. Y. COMMON PLEAS.

Matter of assignment of BRYCE & SMITH to FREDERICK LEWIS.

*Assignment — Inspection of books, &c., of assignors — Examination of witnesses.*

An order for the examination of witnesses and the production of any books and papers by any party or witness under section 21 of the act of 1877, chapter 466, may be had at any time, and is not necessarily confined to cases where a proceeding under the act is pending.

It is not necessary to allege or prove a demand and refusal of inspection in the petition.

An inspection, without an order made on petition, gives no right to file with the county clerk extracts from the books, nor to use them in proceedings under the act. An order must be obtained for the purpose and the application for it involves no reflection upon the assignee.

*Special Term, January,* 1879.

MOTION by National Park Bank, creditor, to set aside order of December 24, 1878, by which an order for the production of books, &c., was vacated.

J. F. DALY, *J.* — The order of December 13, 1878, directing the examination of Alfred D. Griswold, and directing the assignee to produce all books of account, papers and vouchers of the assignors, was authorized by the facts stated in the petition, then presented to the court. The twenty-first section of the act (*chap.* 466, *Laws of* 1877) authorizes the county judge, at any time, on petition of any party interested, to order the examination of witnesses, and the production of any books and papers, by any party or witness before him, or before a referee appointed by him for such purpose. This may be done " at any time," and is not necessarily confined to cases where a proceeding under the act is pending. The statute

provides that the testimony, and extracts from the books and papers, shall be filed with the county clerk, to be used in any action or proceeding then pending, or which may hereafter be instituted. The provision is evidently designed for the obtaining of depositions, perpetuation of testimony and inspection of books and papers for use in any of the various proceedings that grow out of the administration of the assigned estate. Although the statute does not prescribe the proof necessary to authorize such order, it is clear that a necessity for the examination should be shown by the petition, otherwise the assignee might be perpetually obstructed in the administration of the trust by applications in which the books of the assignors, and the assignee's time might be wholly engrossed by examinations instituted by petitioning creditors.

The petition presented in this case, alleged that The Park Bank is a creditor of the assignors to the amount of $18,314.60, upon nine notes indorsed by the assignors and discounted by the Park Bank about June, 1878; that, at that time, the assignors represented to plaintiff, that they were perfectly solvent and worth $273,600, over all their liabilities; that on July 23, 1878, they made this assignment; that their schedules were filed September 27, 1878, showing a total indebtedness of $352,979.59, and actual valuation of assets at $121,411.61; that the assignee employed an accountant, Mr. Alfred D. Griswold, to prepare a balance sheet of the estate from the books, and that such sheet was inspected by an expert employed by the bank, who was of opinion, from a casual inspection, that either the representations of the assignors in June, 1878, were untrue, or the balance sheet was incorrect; that requests to inspect the books were made by petitioners who were, however, put off by excuses; and the petitioners charge a fraudulent concealment by the assignors of assets of the firm.

The charge was grave; a *prima facie* case was made out, and the ascertainment of the truth was not only of importance to all persons interested in the assigned estate, but would aid materially in carrying out the purposes of the assignment act.

Judge VAN HOESEN, therefore, on December 13, 1878, made an order requiring the accountant, Alfred D. Griswold, to appear and be examined before a referee, and requiring the assignee to produce, on such examination, the books and papers of the assignors. Mr. Griswold was evidently a "witness" within the meaning of section 21, and as the assignors were "parties," their books and papers were under the control of the court or judge. The examination under section 21 is itself "a proceeding," and every person interested in the estate who is required to submit to examination, or to produce books or papers, is a "party" to the proceeding. In a broader sense, however, the assignors, assigneees, creditors and sureties are "parties" to all proceedings under the assignment act.

On December 24, 1878, however, judge VAN HOESEN granted, *ex parte*, an order vacating the order above mentioned. This was done on motion of the assignee who presented to the court an affidavit denying that he ever refused to allow an inspection of the books; setting forth that there had been three meetings of creditors at which the bank was represented; that an advisory committee of creditors was appointed which fully examined all the books and papers of the assignors; that forty-five per cent had been offered in settlement at a meeting on September 10, 1878, and a composition agreement to that effect signed by the bank; that on 29th of August, 1878, a petition in bankruptcy against the assignors was filed by certain creditors, and that proceedings thereunder were still pending; and that a proceeding for composition was instituted, and a meeting called for January 10, 1879, before HENRY WILDER ALLEN, register in bankruptcy; that there was a recommendation of composition in bankruptcy at thirty-five per cent by a committee of the creditors; and finally, stating among other matters that the petitioners' proceeding was intended merely to harass and annoy the assignee and debtors, and to coerce the debtors into giving better terms to the bank than to other creditors.

It is manifest that judge VAN HOESEN was justified in setting aside his order for the examination of Griswold, and production of the books, upon the fact coming to his knowledge that proceedings against the debtors were pending in the United States district court in bankruptcy, a fact which had not been disclosed by the petition of the bank. He regarded it as proper to permit no step that required his order or approbation to be taken after the United States court had taken cognizance of the matter in bankruptcy.

There seems to be no other reason than this discovery of the pending bankruptcy proceedings which would require the judge to vacate peremptorily and without notice to the petitioner, his previous order. The other matters stated in the affidavit of the assignee were such as would suggest the propriety of calling on the petitioner for answer, but not of vacating, *ex parte*, the order granted on the petition.

That this was the matter which operated to produce his decision would appear from the third order made by the judge, dated December 27, 1878, requiring the assignee to show cause why the order of December 24, 1878, should not be vacated and the examination originally directed be had. This last order to show cause was granted on a voluminous affidavit of Mr. Worth, president of the Park Bank, setting forth among other things that an injunction, which had been issued by the United States district court staying all proceedings before the referee, had been modified by said court after full hearing and argument, so as to allow the examination of the assignor's books and papers to proceed. The other matters set out in Mr. Worth's affidavit were in support of his original petition.

I regard the facts before the court as sufficient to authorize the examination originally ordered under section 21. The United States district court has expressly declined to interfere with that examination, and this court is bound in all proper cases to allow such remedies to the creditors as the act provides, and as do not conflict with the paramount authority of the bankruptcy court over the same assets.

Matter of assignment of Bryce & Smith to Lewis.

Much proof has been offered on this motion upon an issue which seems to be of minor importance; viz.: whether a demand for inspection was made upon the assignee and whether he refused it. If it were necessary to pass upon the question I should say that he is by no means convicted of an attempt to obstruct the creditors, and that he could not be so convicted upon the affidavits against him, some of which are open to severe criticism.

But it is not necessary, under section 21, to allege or prove a demand and refusal of inspection in the petition. It is of no importance, in considering the propriety of granting the prayer of the petition, that the assignee is and always has been willing to permit the inspection prayed for. An inspection, without an order made on petition, gives no right to file with the county clerk extracts from the books, nor to use them in proceedings under the act. An order must be obtained for the purpose and the application for it involves no reflection upon the assignee.

The main reason for the inspection of the books of these assignors yet remains: that, as set out in the petition on which the order of December thirteen was made, the representations alleged to have been made by the assignors as to their solvency, less than two months before the assignment, were such as to excite surprise when their schedule of assets is examined; and the creditors are not unreasonable in their demand for an investigation. No denial by the assignors of the alleged representations is made, although Mr. Bryce makes an affidavit on this motion, and I am justified in believing that a well founded distrust of the accuracy of the schedules is the ground of the petitioners' desire to examine the assignor's books, not a malicious desire to embarrass the debtors nor a corrupt design to extort a payment to the bank over and above the composition proposed for the creditors generally. I shall therefore direct that the order of December 24, 1878, be vacated and the examination under the order of December 13, 1878, be proceeded with. No costs.